# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

PEDRO GODINEZ-ORTIZ,
        *Defendant-Appellant.*

No. 08-50337

D.C. No.
3:07-CR-01046-L-1

In re: PEDRO GODINEZ-ORTIZ,

PEDRO GODINEZ-ORTIZ,
        *Petitioner,*

v.

UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF CALIFORNIA (SAN
DIEGO),
        *Respondent,*

UNITED STATES OF AMERICA,
        *Real Party in Interest.*

No. 08-73791

D.C. No.
3:07-CR-01046-L-1

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
January 15, 2009—Pasadena, California

Filed April 29, 2009

Before: Stephen S. Trott, Andrew J. Kleinfeld and
Raymond C. Fisher, Circuit Judges.

5011

Opinion by Judge Trott

## COUNSEL

Shereen J. Charlick and Vincent J. Brunkow, Federal Public Defenders, San Diego, California, for the defendant/appellant.

William Allen Hall, Jr., Assistant United States Attorney, San Diego, California; Bruce Searby, Assistant United States Attorney, Los Angeles, California, for the plaintiff/appellee.

## OPINION

TROTT, Circuit Judge:

Pedro Godinez-Ortiz, a defendant in a criminal case, appeals from the district court order of July 18, 2008, which returns him to the Federal Medical Facility in Butner, North Carolina, for a period not to exceed 45 days so that he could be evaluated for "dangerousness" and for a decision whether to file a dangerousness certification. Godinez-Ortiz asserts the district court lacked authority under both 18 U.S.C. § 4241 or

18 U.S.C. § 4246 to issue the order and that the order violated his due process rights under the Fifth Amendment. In the alternative, Godinez-Ortiz petitions for a writ of mandamus seeking vacatur of the district court order. We AFFIRM the district court order and DENY the petition for a writ of mandamus.

## BACKGROUND

On March 29, 2007, Pedro Godinez-Ortiz, a citizen of Mexico, was arrested as he walked across the United States/Mexico International Boundary. Godinez-Ortiz had been removed to Mexico from the United States just fifteen days earlier, after serving a prison sentence for a 1999 conviction for manslaughter in California. On April 25, 2007, he was indicted by a federal grand jury in the Southern District of California on one charge of attempted reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b). The next day, Godinez-Ortiz moved for a competency examination pursuant to 18 U.S.C. § 4241, which was thereafter conducted. On June 21, 2007, Magistrate Judge Louisa S. Porter found Godinez-Ortiz incompetent to stand trial. Godinez-Ortiz was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) for hospitalization and treatment for a period not to exceed four months, in order to determine whether there was a substantial probability that in the foreseeable future he would attain the capacity to permit the trial to proceed.

On July 9, 2007, Godinez-Ortiz was admitted to the Federal Medical Facility in Butner, North Carolina (FMC-Butner). There, officials determined that, though he was not competent, he was not currently a danger to himself or others while within the hospital environment, and therefore did not require involuntary medication pursuant to *Washington v. Harper*, 494 U.S. 210, 227 (1990), to protect himself or others around him in the facility. The officials went on to explain that Godinez-Ortiz could potentially gain competency with the

treatment of antipsychotic medication, and requested permission from the district court to involuntarily medicate Godinez-Ortiz for that purpose.

At a hearing held June 19-20, 2008, the district court concluded that Godinez-Ortiz could not be involuntarily medicated pursuant to *Sell v. United States*, 539 U.S. 166 (2003). On July 18, 2008 the district court explained its ruling at the June 19-20 hearing, which was that there was no substantial probability that Godinez-Ortiz would obtain competence in the foreseeable future.

The government then moved to dismiss the charges against Godinez-Ortiz and further moved that he be returned to FMC-Butner to provide the facility director with the opportunity to reevaluate him and issue a dangerousness certificate pursuant to 18 U.S.C. § 4246, if appropriate. The court correctly noted that the dangerousness evaluation conducted pursuant to *Harper* was limited to whether Godinez-Ortiz was dangerous while contained within the confines of FMC-Butner. The court also correctly recognized that a dangerousness evaluation conducted pursuant to § 4246 would determine whether he might pose a danger to the public if released from the facility. The court granted the government's motion, dismissing the charges without prejudice, but staying its order of dismissal pending appeal and the determination regarding dangerousness. Additionally, the court ordered that Godinez-Ortiz be returned to FMC-Butner for a period of 45 days to give the facility an opportunity to determine whether to file a dangerousness certificate pursuant to § 4246. On July 25, 2008, Godinez-Ortiz filed a Notice of Appeal. The district court has stayed its proceedings pending the determination of Godinez-Ortiz's appeal before this Court.

## DISCUSSION

### A.   Jurisdiction

Godinez-Ortiz argues that this Court has jurisdiction to hear his appeal pursuant to the collateral order doctrine. We review

de novo challenges to our jurisdiction over such interlocutory appeals. *See Bingue v. Prunchak*, 512 F.3d 1169, 1172 (9th Cir. 2008).

**[1]** As a general rule, we "have jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. In criminal cases, this rule ordinarily "prohibits appellate review until conviction and imposition of [a] sentence." *Flanagan v. United States*, 465 U.S. 259, 263 (1984). However, a departure from the general rule may be warranted when waiting for a final judgment " 'would practically defeat the right to any review at all.' " *Id.* at 265 (quoting *Cobbledick v. United States*, 309 U.S. 323, 324-25 (1940)). Under the collateral order doctrine announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), "a preliminary or interim decision is appealable as a 'collateral order' when it (1) 'conclusively determine[s] the disputed question,' (2) 'resolve[s] an important issue completely separate from the merits of the action,' and (3) is 'effectively unreviewable on appeal from a final judgment.' " *Sell*, 539 U.S. at 176 (2003) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). Godinez-Ortiz argues these three criteria are satisfied, whereas the government insists they are not.

First, we conclude that the order conclusively determines the disputed question, whether the court may commit Godinez-Ortiz so that he may be evaluated for dangerousness, and the facility director may decide whether to submit a dangerousness certification. *See Sell*, 539 U.S. at 176. Godinez-Ortiz contends that the district court's order conclusively determines the disputed question, because, absent relief from a higher court, he will be sent to FMC-Butner and subjected to a § 4246 evaluation of his dangerousness. In contrast, the government argues that there has been no conclusive determination of the disputed question because Godinez-Ortiz does not appeal any commitment order pursuant to § 4241, and proceedings to commit him pursuant to § 4246 are still pending.

**[2]** The district court order does conclusively determine the disputed question. Under the district court order Godinez-Ortiz will be held, transported to FMC-Butner, and subjected to a dangerousness evaluation — the very result he is attempting to prevent with this appeal. *See id.*; *see also United States v. Friedman*, 366 F.3d 975, 979 (9th Cir. 2004) (stating "[t]here can be no doubt that the Commitment Order [under § 4241] conclusively determines [the defendant's] present right to be at liberty prior to trial") (internal citation omitted). Thus, the first requirement of the collateral order doctrine is satisfied.

Second, we conclude that the district court order resolves an important issue completely separate from the merits of the action. *See Sell*, 539 U.S. at 176. Godinez-Ortiz points to his original indictment for attempted reentry after deportation, and asserts that whether or not he can be committed to FMC-Butner for a dangerousness evaluation has no bearing on whether he was found in the country illegally after being deported. In contrast, the government identifies whether Godinez-Ortiz should be committed under § 4246 as the action in question, arguing the district court order is not completely separate from the merits of whether he should be committed under § 4246, and that, therefore, the second requirement of the collateral order doctrine is not satisfied.

Godinez-Ortiz, and not the government, has correctly applied the principles of the collateral order doctrine's second requirement. In resolving whether the second requirement of the collateral order doctrine is satisfied, the Supreme Court has held that the order must resolve an important issue completely separate from the merits of the original, underlying action. In *Sell*, the Supreme Court reviewed an Eighth Circuit decision that affirmed a district court order requiring the defendant to be forcibly medicated to restore his competency. 539 U.S. 166. The Supreme Court determined the collateral order doctrine's second requirement was met because, "the basic issue — whether [the defendant] must undergo medica-

tion against his will — is completely separate from the merits of the action, *i.e.*, whether [he] is guilty or innocent of the crimes charged." *Id.* at 176 (internal citation omitted).

**[3]** Likewise, in *Friedman*, this Court reviewed a district court order committing the defendant to the custody of the Attorney General for treatment in accordance with § 4241(d). 366 F.3d 975. In determining whether the collateral order doctrine's second requirement was met, we considered whether the issue of involuntary commitment was "completely separate from the issue of whether [the defendant] committed the crime with which he is charged." *Id.* at 979. In this case, because the district court order returning Godinez-Ortiz to FMC-Butner resolves an important issue completely separate from the charge of attempted illegal reentry, the collateral order doctrine's second requirement is satisfied.

Finally, we conclude that the district court order is effectively unreviewable. *See Sell*, 539 U.S. at 176. Godinez-Ortiz argues the order is effectively unreviewable because he can never regain the time he will be forced to travel to and from FMC-Butner or the time he will spend committed for further evaluation. Additionally, he points out, if the dangerousness evaluation is performed, it cannot be unperformed. In response, the government argues the order is not unreviewable because Godinez-Ortiz has not been committed under § 4246, and if he is, he may appeal.

**[4]** Although there is little case law discussing the reviewability of commitment under § 4246, Godinez-Ortiz draws analogies between the instant case and cases involving jurisdiction over appeals from § 4241. This analogy is fitting. This order is also analogous to appeals of detention orders and motions to reduce bail. *See* 18 U.S.C. § 3145(c); *see also Flanagan*, 465 U.S. at 266. Commitment under § 4241 and detention orders under 18 U.S.C. § 3142, like commitment under § 4246, strip from a defendant the right to be at liberty prior to trial. *Compare* 18 U.S.C. § 4241 *and* 18 U.S.C.

§ 4246. The most significant difference between the two is the length of time committed. Under § 4241(d)(1), the court is permitted to commit a defendant for a "reasonable period of time" not to exceed four months, and to an "additional reasonable period" pursuant to § 4241(d)(2). Section 4247(b) states that, for purposes of an examination ordered under § 4246, the court may commit the person to be examined for a reasonable period not exceeding 45 days and for an additional 30 days upon a showing of good cause. Because the deprivation of liberty is the same, drawing parallels among detention orders, motions to reduce bail, § 4241 and § 4246 is appropriate.

In *Friedman*, this Court exercised collateral jurisdiction over an appeal from a district court order temporarily committing the defendant under § 4241(d). 366 F.3d 975. We concluded that a "[c]ommitment [o]rder is analogous to an order denying bail and requiring pretrial detention, which the Supreme Court has found to be effectively unreviewable upon final judgment, and therefore immediately appealable as a collateral order." *Id.* at 979-80. We noted further that several of our sister circuits have found that a commitment order entered pursuant to § 4241 would be effectively unreviewable on appeal from a final judgment. *Id.* at 979; *see also United States v. Ferro*, 321 F.3d 756, 760 (8th Cir. 2003); *United States v. Filippi*, 211 F.3d 649, 650-51 (1st Cir. 2000); *United States v. Gold*, 790 F.2d 235, 239 (2d Cir. 1986) (holding commitment order under § 4241(d) was appealable under the collateral order doctrine in part because "nothing could recover for the defendant the time lost during his confinement"); *United States v. Weissberger*, 951 F.2d 392, 396 (D.C. Cir. 1991) (holding 30-day commitment order under § 4241(a) and § 4247(b) was appealable under the collateral order doctrine because the loss of liberty would be "complete and effectively unreviewable by the time of final judgment").

To support its position that the collateral order doctrine does not apply, the government points to *United States v. Ohnick*, 803 F.2d 1485 (9th Cir. 1986). In *Ohnick*, the district

court for the Central District of California found, pursuant to § 4241, that the defendant was incompetent and that no substantial probability existed that he would obtain competence in the foreseeable future. As a result, the defendant was subject to the provisions of § 4246. *Id.* at 1486. Yet, the district court for the Central District of California refused to set a date by which a dangerousness hearing under § 4246 was to be initiated. *Id.* We concluded that we did not have jurisdiction, and explained the collateral order doctrine's third requirement would only be satisfied if the California district court's ruling somehow completely deprived the defendant of a dangerousness hearing. *Id.* at 1487.

However, the facts in *Ohnick* are distinguishable. In *Ohnick*, while the California district court refused to hold a dangerousness hearing, the district court for the Western District of Missouri — where the defendant was being held — had already set a date for a dangerousness hearing. *Id.* at 1486. Therefore, we reasoned that, if the Missouri court held the dangerousness hearing, the outcome of that hearing would be final for purposes of 28 U.S.C. § 1291, at which time the defendant could challenge the Missouri court's authority to hold a hearing. *Id.* at 1487. If the Missouri court refused to hold the dangerousness hearing, the defendant could bring a petition for writ against the appropriate district court requesting that it be ordered to hold the statutorily required dangerousness hearing. *Id.*

[5] In contrast, in the instant case, the district court has neither refused to schedule nor scheduled a dangerousness hearing pursuant to § 4246, nor is a dangerousness hearing pending in another court. Instead, the district court ordered Godinez-Ortiz returned to FMC-Butner for a period not to exceed 45 days, to give the facility director the opportunity to file a dangerousness certificate pursuant to § 4246, if appropriate. Thus, here, there is no certainty that a dangerousness hearing will be held. For example, if the director at FMC-Butner does not issue a dangerousness certificate, a danger-

ousness hearing cannot be held and no opportunity for appeal will arise, thus making the order effectively unreviewable.

**[6]** Furthermore, all charges against Godinez-Ortiz are to be dropped for reasons related to his mental condition. While, pursuant to § 4241(d)(2)(B), Godinez-Ortiz is now subject to § 4246, if the director at FMC-Butner does not find it necessary to issue a dangerousness certificate in accordance with § 4246(a), Godinez-Ortiz may be subject to discharge pursuant to § 4246(e), and the district court may order his discharge without a hearing. In contrast to *Ohnick*, in the instant case there are multiple scenarios under which the district court order could be effectively unreviewable on appeal from a final judgment, thus satisfying the collateral order doctrine's third requirement. *See Ohnick* 803 F.2d at 1487; *see also Friedman*, 366 F.3d at 980 (distinguishing *Ohnick* where, if defendant were not permitted to take an interlocutory appeal from his involuntary commitment and temporary incarceration under § 4241(d), he may never be able to appeal the district court's determination that he was properly committed and incarcerated).

Because each requirement of the collateral order doctrine is satisfied, we have jurisdiction over this appeal.

## B. The District Court's Authority to Commit Godinez-Ortiz

Godinez-Ortiz asserts that the district court lacked authority to commit him to the custody of the Attorney General under § 4246, and to commence proceedings under § 4246. We review de novo the district court's interpretation of a statute. *United States v. Mack*, 164 F.3d 467, 471 (9th Cir. 1999).

**[7]** Under § 4241(d) a district court is authorized to commit a defendant who it deems is presently suffering from a mental disease or defect rendering him incapable of "understand[ing] the nature and consequences of the proceedings against him

or to assist properly in his defense." Such commitment may continue:

> (1)   for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> (2)   for an additional reasonable period of time until —
>
>> (A)   his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>>
>> (B) the pending charges against him are disposed of according to law;
>>
>>> whichever is earlier.
>
> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

Here, the district court found that a substantial probability did not exist that Godinez-Ortiz would obtain competence. Additionally, the pending charges against Godinez-Ortiz are to be dismissed for reasons related to his mental condition. Thus, by a plain reading of the statute, it is clear that Godinez-Ortiz has been determined incompetent to stand trial, completing proceedings under § 4241, and is now subject to the provisions of § 4246.

**[8]** Section 4246(a) provides that:

> If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined. The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the court that ordered the commitment. The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

Under § 4246(b), prior to the date of a dangerousness hearing under § 4246(a), a district court "may order that a psychiatric or psychological examination of the defendant be conducted." Section 4247(b) states that, for purposes of an examination ordered under § 4246, the court may commit the person to be examined for a reasonable period not exceeding 45 days and for an additional 30 days upon a showing of good cause.

Godinez-Ortiz argues that the district court lacked authority to commit him and commence proceedings because, by his reading of § 4246(a), such evaluations and commitments are allowed only when: (1) the FMC director files a certification with the clerk of the court in the district where the individual is confined; (2) the individual is hospitalized at the FMC at the time; and (3) prior to filing the certificate with the district court, the evaluation which leads to the certification has already occurred. These criteria, he argues, have not been met.

To support this position, Godinez-Ortiz points to case law to show a district court's authority under § 4241 is limited and narrowly construed and to suggest that the district court in the instant case lacked such authority. *See Weber v. United States Dist. Court for Cent. Dist. of Cal.*, 9 F.3d 76, 79 (9th Cir. 1993) (holding the district court was not authorized to order that the defendant, who was hospitalized pursuant to § 4244, be returned to the hospital for an evaluation under § 4246 after the director certified he had recovered from his mental disease or defect to such an extent that he was no longer in need of custody for care and treatment under § 4244(d)); *United States v. Lapi*, 458 F.3d 555, 562, 558 (7th Cir. 2006) (holding the district court lacked authority to conduct a dangerousness hearing under § 4246 when the state facility determined the defendant no longer required hospitalization and had already released him); *United States v. Baker*, 807 F.2d 1315, 1325 (6th Cir. 1986) (holding, in part, that the district court lacked authority to commit the defendant for an indefinite period of time under § 4246 when it ruled from the bench that his release would create a substantial risk of bodily injury to another person, even though no dangerousness certificate had been filed).

**[9]** However, these cases are easily distinguished from the instant case. Because Godinez-Ortiz has been declared incompetent and the district court has not ordered a dangerousness

hearing or required the director to file a dangerousness certificate, such case law is neither binding nor persuasive.

The government, in response, first contends § 4246 does not specifically state a dangerousness evaluation may only follow the filing of a certificate. Furthermore, the government asserts, § 4246 does not state that the director's certificate must be filed during the person's commitment under § 4241 or before the § 4241(d) evaluation period ends.

**[10]** The government points to decisions affirming a defendant's hospitalization under § 4246, even though the district court sent the defendant for evaluation of the defendant's dangerousness after finding he was unlikely to regain competence, but before a dangerousness certificate was filed. *See United States v. Ecker*, 30 F.3d 966, 968 (8th Cir. 1994); *United States v. Sahhar*, 917 F.2d 1197, 1199 (9th Cir. 1990). In neither of these cases, however, did the defendant argue on appeal that the district court lacked authority to order that evaluation or contend the FMC director never should have had an opportunity to file a dangerousness certificate to trigger a § 4246(a) dangerousness hearing. Thus, the cases cited by the government did not address the issue we now face.

Next, the government argues that Godinez-Ortiz's assertion that the district court lacked authority to commit him under § 4246 because he was not hospitalized at FMC-Butner at the time is inaccurate. The government explains that, because the Bureau of Prisons operates only five Federal Medical Centers, defendants in 89 of the 94 judicial districts are often sent to institutions outside of the district for hospitalization. Godinez-Ortiz was only temporarily transported outside FMC-Butner to be present at his June 19-20 hearing regarding involuntary medication, held in the Southern District of California.

**[11]** We agree with the government. By a plain reading of § 4246, the director at FMC-Butner may determine whether to issue a dangerousness certificate, and nowhere does § 4246

state that the director's certificate must be filed during the person's commitment under § 4241 or before the § 4241(d) evaluation period ends. Under the facts of this case, if the District Court had not ordered Godinez-Ortiz returned to the facility at this juncture, no opportunity for such a determination would have existed. Moreover, the fact that he was temporarily in California for the purpose of a hearing rather than at FMC-Butner did not remove him from custody, and did not mean he was no longer subject to § 4246.

[12] In authorizing the director to file a dangerousness certification, § 4246 necessarily contemplates the temporary commitment of that person so that the director can conduct the evaluation necessary to make the certification decision. Section 4241 and § 4246 do place limits on the district court's authority to commit a person, but those limits were not exceeded in this case. Here, the district court did not violate either statute or relevant case law in issuing its order. A contrary ruling would thwart the director's ability to consider whether to issue a dangerousness certificate, despite ample evidence that Godinez-Ortiz may pose a danger to others if released. Therefore, we conclude the district court acted within its authority in temporarily returning Godinez-Ortiz to FMC-Butner to provide the director with an opportunity to consider whether to issue a dangerousness certificate pursuant to § 4246. The duration of such commitments is controlled by 18 U.S.C. § 4247(b).

## C.   Fifth Amendment

Godinez-Ortiz asserts that the district court's order temporarily returning him to FMC-Butner pursuant to § 4246 violates the Fifth Amendment. We review the constitutionality of a statute de novo. *United States v. Harris*, 185 F.3d 999, 1003 (9th Cir. 1999).

[13] Godinez-Ortiz argues that § 4241 has withstood numerous due process challenges because it includes several

procedural protections. *See* 18 U.S.C. § 4247(d); *Sahhar*, 917 F.2d at 1204. Here, he argues, in ordering him returned to FMC-Butner, the district court ignored these procedural protections, and thus violated the Fifth Amendment. For the same reasons we conclude the district court acted within its authority in issuing its order, we conclude Godinez-Ortiz's Fifth Amendment rights were not violated.

## D. Mandamus

Godinez-Ortiz petitions for a writ of mandamus seeking vacatur of the district court order. Whether a writ of mandamus is the proper remedy is reviewed de novo. *Gill v. Villagomez*, 140 F.3d 833, 834 (9th Cir. 1998).

**[14]** Mandamus is an "extraordinary remedy" that should be invoked only in "exceptional circumstances." *Will v. United States*, 389 U.S. 90, 95 (1967). It is the moving party's burden to establish "that its right to issuance of the writ is clear and indisputable." *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953) (internal quotation marks omitted). We consider five factors in assessing a mandamus petition: (1) whether petitioner has no other adequate means, such as direct appeal, to obtain the requested relief; (2) whether petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression. *Bauman v. United States Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). "These guidelines are cumulative and a proper disposition often requires a balancing of competing factors." *Weber* 9 F.3d at 78.

First, Godinez-Ortiz has alternatively petitioned for a writ of mandamus should this Court determine an interlocutory appeal is improper. Because we have collateral jurisdiction to

hear this appeal, Godinez-Ortiz has other adequate means to obtain his requested relief and the first *Bauman* factor cannot be satisfied.

Second, Godinez-Ortiz argues that, between the incarceration, transportation, and evaluation, under the district court order he will suffer irreparable injury that cannot be corrected on appeal. We agree that Godinez-Ortiz's injury cannot be corrected on appeal. Thus, the second *Bauman* factor is satisfied.

Third, Godinez-Ortiz argues that the district court order was clearly erroneous as a matter of law. We conclude the district court order was not clearly erroneous, but was properly issued within the district court's authority. Thus, the third *Bauman* factor cannot be satisfied.

Fourth, Godinez-Ortiz concedes the fourth *Bauman* factor is not satisfied.

Fifth, Godinez-Ortiz asserts that the district court order raises an issue of first impression. In response, the government points out that both parties have referenced *United States v. Rivera-Morales*, 160 Fed. App'x 648 (9th Cir. 2005), an unpublished Ninth Circuit case that is strikingly similar to the instant case. However, because *Rivera-Morales* was unpublished and issued prior to January 1, 2007, it cannot be cited and would not be precedent even if it could be cited. *See* 9th Cir. Rule 36-3(c). Godinez-Ortiz is therefore correct that this case is one of first impression, which satisfies the fifth *Bauman* factor.

**[15]** While injury to Godinez-Ortiz will not be correctable on appeal and he may present a case of first impression, Godinez-Ortiz has access to an appeal and the district court's order is neither clearly erroneous as a matter of law nor an oft-repeated error. Therefore, upon consideration of the five

factors set forth by this Court in *Bauman*, we conclude that a writ of mandamus is not appropriate in this case.

## CONCLUSION

This court has jurisdiction over this appeal pursuant to the collateral order doctrine. In exercising our jurisdiction, we conclude that the district court acted within its authority when it committed Godinez-Ortiz to the custody of the Attorney General under § 4246. The district court order was a proper result of (1) its finding that there was no substantial likelihood Godinez-Ortiz would obtain competence and (2) the pending disposal of all charges for reasons related to his mental condition, pursuant to § 4241(d)(2).

In addition, we conclude that the district court order did not violate Godinez-Ortiz's Fifth Amendment rights, and that a writ of mandamus is inappropriate in this case.

**AFFIRMED.**