# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 4, 2025          Decided December 12, 2025

No. 24-3014

UNITED STATES OF AMERICA,
APPELLEE

v.

JEFFREY HENRY WILLIAMSON,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cr-00195-1)

---

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellant.

*Allaya Lloyd*, Attorney, U.S. Department of Justice, argued the cause for appellee.  With her on the brief was *William Gullotta*, Trial Attorney.

Before: RAO and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the court filed by *Senior Circuit Judge* RANDOLPH.

Dissenting opinion for the court filed by *Circuit Judge* RAO.

RANDOLPH, *Senior Circuit Judge*: This is an appeal from an Order of the district court issued on February 5, 2024. The full text of the Order, signed by District Judge Walton, is set forth in an Addendum to this opinion.

The appellant, Jeffrey Henry Williamson, is a prisoner at the Federal Correctional Complex in Butner, North Carolina. While nearing the end of his eight-year sentence for threatening to murder an agent of the Federal Bureau of Investigation, Williamson mailed a series of letters threatening not only the Assistant U.S. Attorney who prosecuted him but also the prosecutor's family and an FBI agent.

In his letters, Williamson recounted dreams of murdering the prosecutor and his family, and asked "How does that make you feel? There will be justice/you made a terrible mistake." App. 3. As to the FBI agent, Williamson wrote: "the following BOP staff gang stalking + harassment as well as Butner FCI #1 has caused me nightmares of shooting FBI agent [X] in his head with a 300 mag sniper rifle at 300 yards like a deer". App. 3.

A grand jury in the District of Columbia indicted Williamson in September 2020 for those threats, and Judge Walton denied Williamson's motion to be released pending his trial. App. 227. He has not yet been tried on those charges.

During pretrial proceedings, Williamson finished serving his eight-year sentence for his earlier offenses. The pretrial detention order has continued his confinement at FCI Butner. The validity of that order is not a subject in this appeal.

**I.**

The history leading to the Order on appeal—Judge Walton's Order of February 2024—is as follows.

In June 2021, after several pretrial proceedings conducted via teleconferences, with Williamson representing himself, Judge Walton expressed reluctance to schedule a trial "without some input from [a] mental health expert who [could] assist [him] in assessing whether there [was] a viable issue regarding [Williamson's] mens rea in this case."[1]  App. 141.

Pursuant to 18 U.S.C. §§ 4241(b), 4242(a), and 4247(b), Judge Walton ordered the Medical Center at Butner to conduct a psychological examination of Williamson to determine whether he was competent to stand trial, whether his beliefs in FBI "gang-stalking" were delusional, whether he had the capacity to appreciate that threatening people violated the law, and whether he had the capacity to conform his conduct to the law. App. 158–60.

A forensic psychologist at Butner, Dr. Ross, reported that Williamson suffered from a "delusional disorder,

---

[1]  In opposing Williamson's release from pretrial detention, the government informed Judge Walton of the following history. In 2008, Williamson sent emails to FBI headquarters stating that he would kill FBI agents if they did not stop harassing him. App. 162.  The same year he called and left voicemails at FBI Headquarters threatening to kill federal officials in Washington, D.C., and Houston, Texas. *Id*.  For these actions he was imprisoned for forty-two months.  App. 163.  One week after he was let out on supervised release, he pointed a fake gun at a real estate agent in Texas and threatened to kill her, for which he was sentenced to nine months in state prison and another twenty-four in federal prison.  App. 163–64.  It was after his release from those sentences that he committed the crimes that earned him the eight-year sentence he was serving at FCI Butner.

persecutory type, multiple episodes, currently in acute episode."[2] Although Williamson's condition did not impair his ability to represent himself or to understand the illegality of his conduct, Dr. Ross concluded that Williamson was unable to conform his conduct to the law. App. 270.

Representing himself at a later pretrial hearing Williamson insisted that he did not suffer from a mental illness and stated that he did not intend to raise an insanity defense. App. 237–38. He asked Judge Walton to let him stay at FCI Butner because he was seeking a new examination to prove he was not mentally ill and because he feared that files he had accumulated while representing himself would not be available to him if he were transferred to the District of Columbia to await trial. App. 240.

In December 2021, the government moved to dismiss the 2020 Indictment against Williamson without prejudice in light of his mental condition and the prospect of a valid insanity defense. App. 279. The government also asked Judge Walton to provide that Williamson should "be evaluated for dangerousness and for a decision by the Director of the facility whether to file a dangerousness certification pursuant to 18 U.S.C. § 4246(a) . . .." App. 283.

---

[2] *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (5th ed. Text Revision 2022): "In *persecutory type* the central theme of the delusion involves the individual's belief of being conspired against, cheated, spied on, followed, poisoned, maliciously maligned, harassed, or obstructed in the pursuit of long-term goals. Small slights may be exaggerated and become the focus of a delusional system. The affected individual may engage in repeated attempts to obtain satisfaction by legal or legislative action. Individuals with persecutory delusions are often resentful and angry and may resort to violence against those they believe are hurting them."

After still more proceedings unnecessary to recount, Judge Walton orally granted the government's motion on January 30, 2024.  App. 416.  On February 5, 2024, he issued a written Order dismissing the charges against Williamson, staying the dismissal, and requiring Williamson to remain at FCI Butner for "a reasonable period not to exceed 45 days, to be examined to determine whether the director of FCI Butner should file a certificate pursuant to 18 U.S.C. § 4246." App. 425.

Judge Walton stayed his Order pending this appeal.

**II.**

Since 1949, § 4246 has authorized the detention of mentally ill, dangerous federal prisoners beyond the date the prisoners would otherwise be released.  *United States v. Comstock*, 560 U.S. 126, 129, 140 (2010).  Under the current version of the statute,[3] if the director of the facility where the

---

[3] The version of § 4246 in effect from 1949 to 1984 (then 18 U.S.C. § 4247) required civil commitment proceedings to be held "[w]henever the Director of the Bureau of Prisons shall certify that a prisoner whose sentence is about to expire has been examined by the board of examiners referred to in [18 U.S.C. § 4241], and that in the judgment of the Director and the board of examiners the prisoner is insane or mentally incompetent, and that if released he will probably endanger the safety of the officers, the property, or other interests of the United States. . . ." Act of Sept. 7, 1949. 63 Stat. 687–88.  A separate statute enacted the previous year, 18 U.S.C. § 4241, established a Board of Examiners, consisting of two medical officers appointed by the warden and Attorney General and one mental health expert appointed by the Surgeon General, at every federal penal and correctional institution. Act of June 25, 1948. 62 Stat. 855. These boards examined prisoners alleged to be insane; the boards then reported their findings to the Attorney General. *Id.*

inmate is hospitalized[4] determines that he "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available" then the director shall file a certificate in the district court nearest to the facility. The filing of the certificate "shall stay the release of the person pending completion of procedures contained in this section." 18 U.S.C. § 4246(a). The filing also begins civil commitment proceedings, including a hearing, pursuant to 18 U.S.C. §§ 4246(b) & (d), 4247(d).

Section 4246 applies to three categories of prisoners: (1) those whose sentences are about to expire, (2) those who were committed to the custody of the Attorney General under 18 U.S.C. § 4241(b), and (3) those "against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person." Judge Walton's Order placed

---

[4] In general the statute applies to "a person [who] is hospitalized." The Butner Federal Correctional Complex consists of four facilities: three "Correctional Institutions," and one "Medical Center." Presumably carrying out Judge Walton's Order would involve transferring Williamson to the Medical Center, a hospital and one of the few facilities in the United States capable of making § 4246 judgments. *See United States v. Berry*, 142 F. 4th 184, 189 (4th Cir. 2025); *see also United States v. Godinez-Ortiz*, 563 F.3d 1022, 1031 (9th Cir. 2009) ("because the Bureau of Prisons operates only five Federal Medical Centers, defendants in 89 of the 94 judicial districts are often sent to institutions outside of the district for hospitalization.") Judge Walton knew this. His June 2021 order required Williamson's psychiatric analysis to "be performed at a federal medical center or another facility at FCI Butner that is suitable for the psychiatric or psychological examination." App. 158. Williamson has not mounted any argument dealing with this aspect of § 4246(a).

Williamson in the third "dismissed charges" category of § 4246(a), and thus made him eligible for a dangerousness determination by the facility director at Butner.

We interpret "all criminal charges have been dismissed" in § 4246(a) not to mean that the prisoner must have been released from custody. That interpretation would be senseless. It would mean that a prisoner must be released before he may be evaluated to determine whether he should be released. It would also contradict § 4246(a)'s directive that the issuance of a dangerousness certificate stays the prisoner's release—which necessarily contemplates the prisoner's remaining in custody while the director considers the danger of releasing him. Williamson does not argue otherwise.

Appellate counsel for Williamson nevertheless contends that the Order exceeded the district court's authority. As he now sees it, the Order required the facility director to subject his client to a § 4246(b) examination even though no examination can occur until after the director issues a dangerousness certificate.[5] The government counters that Judge Walton's Order merely ensured that the facility director at Butner would have the opportunity to decide whether to issue that certificate.

---

[5] We say "as he now sees it" because Williamson's "stand-by"counsel, at the hearing preceding this Order, agreed with Judge Walton's disposition. Counsel told the court: "Well, I think you can do what the government just said, which is to dismiss the charge – the government has a motion pending to dismiss the charge. I think you can do that, and I think you can stay the order for some minimal period of time to allow the government to file the 4246 certificate down in Butner, which is exactly what happened in Godinez-Ortiz [563 F. 3d 1022, 1026 (9th Cir. 2009)]." App. 411.

This is a "quarrel in a straw."[6] The contested portion of Judge Walton's Order required only that the facility director perform the duty § 4246(a) assigned to him—namely, determine whether releasing Williamson would pose a danger to the public.  The effect of the Order would have been the same if, instead, it read: "IT IS HEREBY ORDERED, that Mr. Director shall do what 18 U.S.C. § 4246(a) requires of him with respect to inmate J.H. Williamson, No. ____, now that the court has ordered dismissal of the charges against this inmate for reasons solely related to his mental condition."[7]

Judge Walton's Order, although perhaps unnecessary, is appropriate.  Any facility director, to comply with § 4246(a), must issue a certificate if he finds that the prisoner would pose a danger if released. But what if the director determines that the prisoner would not pose a danger? Nothing in § 4246(a) requires the director to publish—let alone explain—that outcome.  Thus, if no certificate issues there might be some doubt whether the director even exercised the judgment demanded of him.  An order such as the one Judge Walton wisely issued made sure that the director performed his duty under § 4246(a).

There is nothing to Williamson's related argument that Judge Walton's Order is invalid because it required a "psychiatric examination," which—the argument goes—can only be ordered after a certificate is filed and only by the court closest to the facility.

Judge Walton's Order did not prescribe a "psychiatric examination"—under § 4246(b) or otherwise.  The operative

---

[6] WILLIAM SHAKESPEARE, HAMLET act 4, sc. 4, l. 53–56.

[7] The early versions of this statute made the director's duty more explicit, requiring the director have the inmate examined by a resident Board of Examiners before they could issue a certificate. Act of Sept. 7, 1949. 63 Stat. 687–88.

paragraph of the Order describes the director's decision-making responsibility as "conduct[ing] the evaluation"[8] or "examin[ing]" Williamson to decide whether to issue a certificate. To accomplish this the director necessarily must exercise judgment. It is of no moment whether a court calls this exercise an "assessment,"[9] or an "evaluation,"[10] or an "examination,"[11] or a "determination."[12]

Williamson also contends that there was no need for the court to order any new evaluation or examination of him. He puts it this way: "Mr. Williamson had been at Butner for years, serving his prior sentence and in pretrial custody in the present case, and, thus, the director had ample opportunity and information upon which to 'assess' whether to issue a certificate." Reply Brief, at 6. The assumption is that records from Williamson's many years at Butner provide sufficient material to satisfy the director's obligation under §4246(a). But §4246(a) is concerned with the present and what it predicts about the future. The director must determine whether the prisoner is "*presently* suffering from a mental disease" and would be a danger to the public if released. It follows that the director must evaluate Williamson's current condition—that

---

[8] Quoting *United States v. Godinez-Ortiz*, 563 F.3d 1022, 1032 (9th Cir. 2009).

[9] As the Eighth Circuit did in *United States v. Payen,* 144 F.4th 1019, 1022 (8th Cir. 2025).

[10] As the Fifth Circuit did in *Sealed Appellee v. Sealed Appellant*, 83 F.4th 399, 402 (5th Cir. 2023).

[11] As the district court did in *United States v. Guzman-Montesino*, No. CR 24-106(GMM), 2025 WL 2374770, at *3 (D.P.R. Aug. 14, 2025).

[12] As the Supreme Court did in *Greenwood v. United States*, 350 U.S. 366, 370 (1956).

is, his condition when his release is imminent.

The Fourth Circuit adopted this interpretation when reviewing an order similar to the Order now before us. There too the district court's order indicated that the facility director at Butner would make a preliminary dangerousness determination. *See United States v. Berry*, 142 F. 4th 184, 190 (4th Cir. 2025). The government had requested an order "referring [Berry] to the Bureau of Prisons for evaluation for civil commitment pursuant to 18 U.S.C. § 4246." Motion to Refer Defendant for a Civil Commitment Determination, *United States v. Berry*, 2:15-cr-20743-DML-MKM (S.D. Mich. 2019). The district court granted the request stating that "it is appropriate that Berry be evaluated for civil commitment." Order Granting Motion to Dismiss and to Refer Defendant For a Civil Commitment Evaluation, *United States v. Berry*, 2:15-cr-20743-DML-MKM (S.D. Mich. 2019). The Fourth Circuit affirmed the order, reasoning that "it would make little sense to interpret the statute [§ 4246] to require the release of dangerous, mentally incompetent individuals the moment their charges are dismissed without affording the government a reasonable opportunity to seek certification under § 4246." *Berry*, 142 F. 3d at 192.

The Ninth Circuit reached the same result in upholding a district court order identical to Judge Walton's.[13] The court

---

[13] The court of appeals in *Godinez-Ortiz* ruled that the district court "correctly recognized that a dangerousness evaluation conducted pursuant to § 4246 would determine whether [the defendant] might pose a danger to the public if released from the facility. The court granted the government's motion, dismissing the charges without prejudice, but staying its order of dismissal pending appeal and the determination

reasoned that "[i]n authorizing the director to file a dangerousness certification, § 4246 necessarily contemplates the temporary commitment of that person so that the director can conduct the evaluation necessary to make the certification decision." *Godinez-Ortiz*, 563 F.3d at 1032.

This brings us to Williamson's remaining argument. As we understand it, he contends that because § 4246 does not expressly authorize a district court to order a director to conduct a preliminary dangerousness evaluation Judge Walton had no authority to issue an order requiring or even allowing the director to make that judgment. *E.g.* Appellant Brief at 19, 23, and Reply Brief at 12–13.

It is a well-established principle that district courts have inherent powers, including the power to stay proceedings, which they can wield to respond to specific problems when doing so does not contradict any express rule or statute. *See Dietz v. Bouldin*, 579 U.S. 40, 46 (2016); *Degen v. United States*, 517 U.S. 820, 823 (1996); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, (1991); *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962); *United States v. Hudson*, 7 Cranch 32, 34 (1812)). The Order here is a reasonable response to the specific problem of making the "dismissed-charges" category in § 4246(a) administratively workable and does not contradict the statute. *See Berry*, 142 F. 4th at 192; *see also Godinez-Ortiz*, 563 F.3d at 1032.

---

regarding dangerousness. Additionally, the court ordered that [the defendant] be returned to FMC-Butner for a period of 45 days to give the facility an opportunity to determine whether to file a dangerousness certificate pursuant to § 4246." 563 F.3d at 1026.

12

We close with this response to the dissent.

To support its theory that we lack appellate jurisdiction, the dissent relies on the same reasons we have just given for rejecting the defendant's appeal on the merits. The outcome of our decision is the same as the dissent's preferred "jurisdictional" disposition: Judge Walton's Order, stayed during the pendency of this appeal, will go into effect. The question naturally arises: should our opinion be placed "on the merits" or instead, as the dissent prefers, should it be labeled a "jurisdictional" determination? *Bell v. Hood*, 327 U.S. 678, 682 (1946), gives the answer: the decision should be on the merits.

The Order dismisses the indictment against Williamson. Williamson objects only to one aspect of the Order: the requirement that a facility director at Butner make a dangerousness determination. According to Williamson, this illegally required his confinement to a hospital for a maximum of 45 days[14] to be subjected to a psychiatric evaluation. Under circuit law, an order committing a defendant to a prison hospital "to undergo an involuntary psychiatric examination" is immediately appealable. *United States v. Weissberger*, 951 F.2d 392, 397 (D.C. Cir. 1991). *Accord United States v. Godinez-Ortiz*, 563 F.3d 1022 (9th Cir. 2009); *United States v. Berry*, 142 F.4th 184 (4th Cir. 2025). Our decision that the Order did not do what Williamson claims is a decision on the merits, not a ruling that we lack jurisdiction. *See Bell v. Hood*, *supra*; *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).

---

[14] See note 4 *supra* and the Order.

*Affirmed.*

**ADDENDUM**

**ORDER**

In accordance with the oral rulings issued by the Court at the status hearing held on January 30, 2024, via teleconference, it is hereby

**ORDERED** that the Government's Motion for an Evaluation Pursuant to 18 U.S.C. § 4246, to Dismiss the Indictment without Prejudice, and to Stay the Order of Dismissal Pending a Dangerousness Certification, ECF No. 113, is **GRANTED.** It is further

**ORDERED** that the defendant shall remain at FCI Butner for a reasonable period of time, not to exceed forty-five days, to be examined to determine whether the director of FCI Butner should file a certificate pursuant to 18 U.S.C. § 4246. See United States v. Godinez Ortiz, 563 F.3d 1022, 1032 (9th Cir. 2009) ("In authorizing the director to file a dangerousness certification, § 4246 necessarily contemplates the temporary commitment of that person so that the director can conduct the evaluation necessary to make the certification decision."); see id. ("The duration of such commitment[] is controlled by 18 U.S.C.

§ 4247(b).""). It is further

ORDERED that the Court will dismiss the Indictment without prejudice "solely for reasons related to the mental condition of the [defendant.]" 18 U.S.C. § 4246(a). However, such dismissal is **STAYED** pending the completion of the evaluation of the defendant and the determination by the director of FCI Butner regarding whether to file a dangerousness certificate pursuant to 18 U.S.C. § 4246. See Godinez-Ortiz, 563 F.3d at 1026 (affirming the district

court's order which "granted the motion [to dismiss], dismiss[ed] the charges without prejudice, [and] stay[ed] [the] order of dismissal pending . . . the determination regarding dangerousness"); see, e.g., United States v. Fletcher, No. 12-cr-184 (DBH), 2014 WL 3378662, at *2 (D. Me. July 9, 2014) (granting "the government's motion to dismiss without prejudice and its motion for an order directing the United States Bureau of Prisons, through FMC Butner, to conduct a dangerousness evaluation under 18 U.S.C. § 4246" and staying the order of dismissal "pending the completion of the dangerousness evaluation" in accordance with the procedure approved by the Ninth Circuit in Godinez-Ortiz); United States v. Hardy, No. 09-cr-130 (DBH), 2011 WL 997288, at *1 (D. Me. Mar. 18, 2011) (citing Godinez-Ortiz in granting the government's motion for a dangerousness evaluation, to dismiss without prejudice, and stay the order of dismissal).[1] It is further

---

[1] The Court acknowledges that, if the director of FCI Butner files a certificate of dangerousness pursuant to 18 U.S.C. § 4246, the certificate must be "transmit[ted] . . . to the clerk of the court for the district in which the [defendant] is confined[,]" 18 U.S.C. § 4246(a), and, thus, any dangerousness proceedings under 18 U.S.C. § 4246 would procced [sic] in that district rather than in this Court, see United States v. Jones, No. 99-cr-191

**ORDERED** that the time from January 30, 2024, until the date on which the director of FCI Butner makes the determination regarding whether to file a certificate pursuant to 18 U.S.C. § 4246, is excluded under the Speedy Trial Act, to allow time for the defendant to be examined for the purposes of this determination. It is further

**ORDERED** that, upon the filing of a notice of appeal challenging this Order, which the defendant represents he intends to file, the proceedings before this Court will be **STAYED** pending a ruling by the District of Columbia Circuit. It is further

**ORDERED** that the defendant shall notify the Court within seven days of the resolution of his forthcoming appeal that will challenge this Order. It is further

**ORDERED** that the execution of this Order shall be **STAYED** for five days to allow the defendant to file a notice of appeal. It is further

**ORDERED** that the Clerk of the Court shall forthwith mail a copy of this Order to the defendant s address on record.

**SO ORDERED** this 5th day of February, 2024.

---

(JMF), 1999 WL 1062139, at *2 (D.D.C. Nov. 15, 1999) (stating that "[t]he only natural reading of [18 U.S.C. § 4246(a)] is that the court of confinement, where the certificate was filed, has jurisdiction to determine dangerousness" and that "exclusive jurisdiction to commit the defendant under 18 U.S.C.[] § 4246 lies in the court where he is presently confined").

RAO, *Circuit Judge*, dissenting: It is highly unusual for this court to review an interlocutory order in a criminal case. We may hear such appeals only if the order conclusively determines rights "too important to be denied review" and meets the strict requirements of the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Jeffrey Williamson was already committed to pre-trial detention. The order under review merely provides up to 45 days for the director of the facility detaining Williamson to determine whether to initiate civil commitment proceedings, a task assigned to the director by statute. The order does not resolve the type of important question amenable to interlocutory review. This court therefore lacks jurisdiction, and the appeal should be dismissed.

I.

Jeffrey Williamson was indicted for mailing letters threatening an FBI agent and a federal prosecutor while serving a sentence at the Federal Correctional Institution ("FCI") in Butner, North Carolina. In June 2021, when his sentence expired, Williamson was committed to pretrial detention. After a court-ordered psychiatric examination concluded that he met the standard for insanity, the government moved to dismiss his indictment without prejudice "solely for reasons related to [his] mental condition." J.A. 268.

The government also asked the district court to stay the dismissal order and commit Williamson to FCI Butner for 45 days so he could be evaluated for dangerousness under 18 U.S.C. § 4246. That provision authorizes civil commitment of individuals whose release poses a danger to the public. As applicable here, it applies to persons "in the custody of the Bureau of Prisons" whose charges "have been dismissed solely for reasons related to the[ir] mental condition." 18 U.S.C. § 4246(a). If the director of the facility where the person is held determines he meets the statute's standard for dangerousness,

the director must file a so-called dangerousness certificate. *Id.* This certificate stays the person's release pending civil commitment proceedings provided for in the statute. *Id.*

The district court granted the government's motion. The order required that he "remain at FCI Butner" for up to 45 days "to be examined to determine whether the director" should file a dangerousness certificate. But the order did not expressly commit Williamson under section 4246. The order also stated that the court will dismiss the indictment once the director determines whether to file a certificate. The court stayed its order pending this appeal.

## II.

The district court's limited order is not a final judgment, nor does it satisfy the strict requirements of the collateral order doctrine. Because the order does not decide the type of important issue subject to interlocutory review, we lack jurisdiction to review it.

### A.

Appellate jurisdiction is generally limited by statute to "final decisions of the district courts." 28 U.S.C. § 1291. "In criminal cases, this prohibits appellate review until after conviction and imposition of sentence." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989). Williamson has not been convicted, and his indictment has not yet been dismissed, so the order under review is not a final judgment. Accordingly, we have jurisdiction only if the order fits within the "'small class' of collateral rulings that … are appropriately deemed 'final.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Cohen*, 337 U.S. at 545–46). An order qualifies for interlocutory review if it: (1) "conclusively determines the disputed question"; (2) "resolves an important issue

completely separate from the merits of the action"; and (3) "is effectively unreviewable on appeal from a final judgment." *Sell v. United States*, 539 U.S. 166, 176 (2003) (cleaned up).

The Supreme Court has stressed the need to apply this standard stringently and explained that the second and third prongs embody a "judgment about the value of the interests" at stake. *Mohawk*, 558 U.S. at 107 (cleaned up); *see Will v. Hallock*, 546 U.S. 345, 350–52 (2006). Only if deferring review "imperil[s] a substantial public interest or some particular value of a high order" does the collateral order involve "*important* questions" that are "effectively unreviewable" after final judgment. *Mohawk*, 558 U.S. at 107 (cleaned up). The standard is designed to respect the statutory limits of section 1291 and to prevent "piecemeal" appeals from "undermin[ing] efficient judicial administration." *Id.* at 106.

In criminal cases, the Court applies the collateral order doctrine "with the utmost strictness." *Flanagan v. United States*, 465 U.S. 259, 265 (1984). "[T]he delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." *Di Bella v. United States*, 369 U.S. 121, 126 (1962). Interlocutory appeals undermine the defendant's and society's "strong interest in the speedy resolution" of criminal cases. *Flanagan*, 465 U.S. at 264; *see* U.S. Const. amend. VI. The Supreme Court has recognized only four issues that justify immediate appellate review of a criminal order: the denial of a motion to reduce bail, *Stack v. Boyle*, 342 U.S. 1, 6 (1951); the denial of a motion asserting Double Jeopardy, *Abney v. United States*, 431 U.S. 651, 662 (1977); the denial of a motion asserting Speech and Debate immunity, *Helstoski v. Meanor*, 442 U.S. 500, 507–08 (1979); and the authorization of involuntary medication, *Sell*, 539 U.S. at 177. The Court has resisted extending interlocutory review beyond matters that are

substantially similar to these four types. *See Flanagan*, 465 U.S. at 267; *United States v. MacDonald*, 435 U.S. 850, 857 (1978). This circuit has similarly adhered to a "restrictive approach" and declined to extend the doctrine "[b]eyond the penumbras of *Abney* … and *Helstoski*." *United States v. Brizendine*, 659 F.2d 215, 224 (D.C. Cir. 1981); *see also United States v. Fokker Services B.V.*, 818 F.3d 733, 747–49 (2016).

B.

The district court's order does not meet the requirements for an immediately appealable collateral order.

As the majority explains, the brief order here does not decide an important question. It simply permits the director at FCI Butner to evaluate Williamson and determine whether to file a dangerousness certificate. *See* Majority Op. 7–9. The district court held that it will dismiss the charges against Williamson for reasons of mental defect, so he was subject to a dangerousness evaluation under section 4246(a). The order appropriately provides time for the facility director to undertake the evaluation and to determine whether Williamson would pose a danger if released.

Williamson argues the order is immediately appealable because it commits him to a new term of custody and subjects him to an involuntary psychiatric examination. But properly understood, this order does neither. It simply leaves Williamson in pretrial detention, which was previously authorized in the June 2021 order, an order not challenged here.[1] The order under review also does not mandate a

---

[1] Williamson already appealed the June 2021 pretrial detention order without success. *See* Per Curiam Judgment, No. 21-3042 (D.C. Cir. Mar. 25, 2022). Had Williamson filed a new motion for the district

psychiatric examination; it simply permits the section 4246(a) evaluation for dangerousness.

As such, the order has little consequence and cannot satisfy the stringent requirements of the collateral order doctrine. Specifically, the order fails the second and third prongs because it does not resolve an "*important* question[]" that is "effectively unreviewable" after final judgment. *Mohawk*, 558 U.S. at 106–07 (cleaned up). As explained above, the second and third prongs apply only to those orders that decide important issues such that deferring review "imperil[s] a substantial public interest or some particular value of a high order." *Id.* at 107 (cleaned up). The order here only indicates that Williamson, who is already detained, should be evaluated for dangerousness under section 4246(a). This dangerousness evaluation is the process by which the director determines whether to file a certificate of dangerousness now that Williamson's charges will be dismissed for reasons of mental defect. The order merely confirms how the (stayed) dismissal interacts with section 4246(a) to permit the dangerousness evaluation and provides the director with up to 45 days to perform that evaluation. The order thus "does not cause or compound [Williamson's] deprivation." *MacDonald*, 435 U.S. at 861.

The order does not decide the sort of important question recognized as warranting immediate review. For instance, the order does not commit Williamson to involuntary hospitalization. *Cf. United States v. Weissberger*, 951 F.2d 392, 396–97 (D.C. Cir. 1991) (holding that commitment orders

---

court to revoke its pretrial detention order, he would be statutorily entitled to appeal an order denying it. *See* 18 U.S.C. § 3145(c); *In re Stone*, 940 F.3d 1332, 1338–39 (D.C. Cir. 2019). But this appeal involves no such order.

under section 4241 are immediately appealable). The order plainly involves no claimed immunity from trial. *See United States v. Cisneros*, 169 F.3d 763, 767–69 (D.C. Cir. 1999) (dismissing interlocutory appeal in part because "[n]othing Cisneros argues amounts to a right not to be tried"). Nor does the order mandate a severe infringement of Williamson's liberty similar to an order requiring involuntary psychiatric medication. *Cf. Sell*, 539 U.S. at 176–77. The district court's order cannot be analogized to any of the issues important enough for interlocutory review. Asserting jurisdiction over this appeal would therefore require recognizing a new category of collateral orders, a consequence that the majority neither acknowledges nor explains.

The Fourth Circuit's reasoning in a similar appeal involving section 4246 further highlights why review under the collateral order doctrine is unavailable here. *See United States v. Carrington*, 91 F.4th 252, 256 (4th Cir. 2024). There, the court dismissed an appeal of an order that, among other things, stated the defendant was "subject to" section 4246. *Id.* at 264. The defendant had been in custody under section 4241, which expressly provides that upon the expiration of such custody the individual "is subject to the provisions of section 4246." *Id.* at 257–58, 262–63; 8 U.S.C. § 4241(d). The order at issue merely confirmed what the statute already provided. Consequently, it "*decided* nothing" and was "not an appealable collateral order." *Id.* at 270. The order under review here, which merely recognizes that Williamson is subject to a dangerousness evaluation under section 4246, is similarly not appropriate for interlocutory review.

My colleagues' assertion that the proper interpretation of the district court's order is a merits issue, not a jurisdictional

one,[2] turns the collateral order doctrine on its head. Section 1291 requires us to determine whether there is a "final decision." That assessment is not a merits question, but a prerequisite to jurisdiction. The Supreme Court's standard for whether a collateral order is appealable as a "final decision" requires us to determine whether the order "conclusively determines the disputed question" and "resolves an important issue." *Sell*, 539 U.S. at 176 (cleaned up). Interpreting the district court's order is thus a necessary step before deciding whether we have jurisdiction. *See Summers v. U.S. Dep't of Just.*, 925 F.2d 450, 453 (D.C. Cir. 1991) (holding collateral order doctrine inapplicable to district court's stay in a FOIA case after interpreting the stay as "subject to revision" given it required "periodic status reports" from the defendant); *Carrington*, 91 F.4th at 266–70 (holding collateral order doctrine inapplicable to district court's order that the defendant was "subject to the provisions of 18 U.S.C. § 4246" after rejecting the argument that the order "conclusively resolved the question of the applicability of" section 4246); *cf. Robinson-*

---

[2] For this proposition, the majority relies on *Bell v. Hood*, 327 U.S. 678 (1946), which held that a nonfrivolous argument that a claim arises under federal law will be sufficient for jurisdiction under 28 U.S.C. § 1331. But the Supreme Court has recognized that the "nonfrivolous argument" standard does not apply universally and that it "has interpreted other jurisdictional statutes differently." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 183–84 (2017). For example, when assessing diversity jurisdiction courts must determine whether "in fact" the parties are diverse, "not simply whether they are arguably so." *Id.* at 184. Similarly, for appellate jurisdiction under section 1291, the Court has never suggested that a nonfrivolous argument is enough. Rather, courts must consider whether there is in fact a "final decision." *See, e.g.*, *Midland Asphalt*, 489 U.S. at 798, 800–02 (affirming dismissal for lack of jurisdiction under section 1291 because order was not a final judgment and did not qualify under the collateral order doctrine).

*Reeder v. Am. Council on Educ.*, 571 F.3d 1333, 1338 (D.C. Cir. 2009) (dismissing for lack of appellate jurisdiction after rejecting appellant's "misread[ing]" of the district court's order as a final judgment). Because the district court's order, properly understood, does not qualify under the collateral order doctrine, we must dismiss Williamson's appeal for lack of jurisdiction.

* * *

The majority affirms the district court's order in part because Williamson's appeal is merely a "quarrel in a straw." Majority Op. 7. That observation, however, is precisely why the order is not immediately appealable. Because this court lacks jurisdiction, Williamson's appeal should be dismissed. I respectfully dissent.