RAWLINSON, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s holding that the Lafayette School District failed to provide M.M. a Free Appropriate Public Education, and from the reversal of the award of attorney’s fees. Giving appropriate deference to the findings of the state Administrative Law Judge (ALJ), I conclude that no procedural violation of the Individuals with Disabilities Education Act (IDEA) was committed by the School District. Neither do I agree that the district court failed to address Plaintiffs’s claim brought pursuant to Section 504 of the Rehabilitation Act.
My disagreement with the majority primarily stems from our differing view of the Response-to-Intervention (RTI) model utilized by the School District to measure achievement levels of all students in the school. It is undisputed that these assessment tools were administered to all students to identify those who might benefit from extra assistance, and were NOT a mechanism used to identify students in need of special education. Nevertheless, the majority holds that failure to provide *863 these test results to C.M.’s parents resulted in a violation of the IDEA.
The ALJ explored this matter in detail following an eleven-day hearing in which he actively participated. We have consistently recognized the expertise of administrative judges who routinely preside over hearings addressing the adequacy of special education plans adopted and administered by local school districts. The decisions of these specialized judges are entitled to substantial deference. In J.W. v. Fresno Unified School Dist., 626 F.3d 431, 438 (9th Cir.2010), we reminded ourselves that we must not substitute our “own notions of sound educational policy for those of the school authorities” when considering cases under the IDEA (citation omitted). We specifically noted that increased deference is afforded the decision of a hearing officer when his findings “are thorough and careful.” Id. (citation omitted). We generally consider findings to be “thorough and careful” when the hearing officer participates in questioning witnesses, and pens a decision containing a complete recitation of the facts and a comprehensive analysis of the issues. Id. at 40-41 (citation omitted); see also L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 908 (9th Cir.2009), as amended (determining that a twenty-page opinion met the standard of “thorough and careful”). The ALJ’s decision easily meets these criteria.
In a comprehensive, detailed, forty-eight page decision, the ALJ rejected the claim that the School District was required to incorporate the RTI documents as part of the assessment process to determine C.M.’s eligibility for special education services. See ALJ Decision, p. 18. The ALJ described credible testimony from the principal at C.M.’s school, who explained that the school’s RTI program is primarily used to assign students to teachers based on achievement level. See id. at p. 5. At the beginning of each school year, every student is administered a battery of screening assessments. From these assessments, a card is prepared for each student listing the student’s grade level, test scores, biographical information, screening results, and classroom observations. See id. The purpose of this RTI model “is to provide early and effective intervention to students requiring additional support....” Id. During the month of October, the school held assessment sessions for each grade level. During these assessment sessions students were placed into one of three categories: Intensive (those students performing well below grade level), Strategic (those students performing within the grade level curriculum range, but in need of additional support), and Benchmark (those students performing at or above grade level). See id. at pp. 5-6. Classes are then “comprised of a blend of students from each category.” Id. at p. 5.
From this description, it is apparent that the RTI assessments were for the purpose of determining the makeup of the classrooms rather than assessing any child for eligibility for special education services. Indeed, the RTI assessment is part and parcel of the School District’s general education system. See id. at p. 6. These assessments took place three times each school year to monitor the educational progress of all students, not just those in need of special education. See id. It was only after concerns were raised regarding C.M.’s lack of academic progress in the area of language arts that C.M. was referred for testing to determine his eligibility for special education services. See id. at p. 9.
The ALJ made a clear distinction between use of the RTI as a means to assign students to their respective classrooms *864 and use of the RTI as an assessment tool to determine eligibility for special education services. The ALJ explained that school districts have the option of using an RTI model to determine eligibility for special education services, or using a “student’s ability versus student’s actual achievement discrepancy model.” Id. at p. 19 and n. 10. The ALJ noted that it was undisputed that the Lafayette School District used the “ability to achievement discrepancy model” to determine C.M.’s eligibility for special education services. Id. n. 10. The record supports this determination. As the majority acknowledges, RTI assessments are based on the Slosson Oral Reading Test and the Dynamic Indicators of Basic Early Literacy Skills Test. See Majority Opinion, p. 6. However, the assessment used to determine C.M.’s eligibility for special education services were the Woodcock Johnson III reading comprehension test and the Comprehensive Test of Phonological Processing. C.M.’s Eligibility Summary form documenting his eligibility for special education services did NOT list the RTI in the assessments used to make the determination of eligibility or to corroborate the determination of eligibility.
Rather than deferring to the ALJ’s considered resolution of this issue, the majority embarks upon a de novo review of the record to reach a conclusion contrary to that of the ALJ and at odds with the record.
As the district court noted, Plaintiffs’ reliance on 20 U.S.C. § 1414(c) is misplaced. That statute provides in pertinent part:
Additional requirements for evaluation and reevaluations
(1) Review of existing evaluation data
As part of an initial evaluation (if appropriate ) and as part of any reevaluation under this section, the [Individualized Education Program] Team and other qualified professionals, as appropriate, shall—
(A) review existing data on the child
20 U.S.C. § 1414(c)(l)(A)(emphasis added).
It is important that this provision is tethered to the evaluation and assessments conducted by the team responsible for determining the student’s eligibility for special education services. Because the record reflects that the RTI assessments were not used to determine C.M.’s eligibility for special education services, this provision does not support the majority’s conclusion that the School District was required to provide the RTI data to C.M.’s parents under the IDEA, especially considering that the statutory language is tempered by inclusion of the phrase “if appropriate,” thereby reflecting deference to the discretion of the school officials. See Our Children’s Earth Found. v. United States EPA, 527 F.3d 842, 851 (9th Cir.2008) (noting that use of “if appropriate” in the statute signifies a grant of discretion); see also United States v. Godinez-Ortiz, 563 F.3d 1022, 1029 (9th Cir.2009) (recognizing that because the governing statute provided for a hearing, “if appropriate,” the hearing might never occur); K.D. v. Hawaii Dept. of Educ., 665 F.3d 1110, 1119 (9th Cir.2011) (describing “if appropriate” as a “qualifier”). This same discretionary language vested the Lafayette School District with discretion to determine which assessment should be administered and, correspondingly, which data should be reviewed in evaluating C.M. for special education services. Exercising its statutory discretion, the School District elected NOT to use the RTI as an assessment model. Consequently, no legal obligation arose to review or provide the RTI data in conjunction with the evalúa *865 tion of C.M.’s eligibility for special education services.
Plaintiffs’ argument fares no better under the provisions of § 1414(b), which requires the educational agency to notify the parents of the description of evaluation procedures the educational agency “proposes to conduct.” Because the School District did not propose to utilize the RTI model to evaluate C.M.’s eligibility for special education services, this provision did not mandate notification of the RTI data. In sum, the majority’s conclusion that the School District relied upon the RTI data and was required to provide that data to C.M.’s parents as part of the IDEA procedural requirements ignores the factual findings made by the ALJ and the district court, and deviates from the language of the IDEA.
I also disagree that the district court failed to explicitly address Plaintiffs’ claim under the Rehabilitation Act. This claim was encompassed within Plaintiffs’ assertion that the school district’s motives for seeking a reevaluation of C.M. were vindictive. The district court explicitly addressed this claim under a section titled “Whether the District Unlawfully Retaliated by filing a Due Process Complaint.” District Court Opinion, p. 45. The district court restated Plaintiffs’ contention that “the District engaged in retaliatory behavior against plaintiffs in violation of § 504 of the Rehabilitation Act to intimidate, punish, and discourage Plaintiffs from asserting their rights....” Id. (internal quotation marks omitted). The district court referenced the finding from the ALJ that the due process complaint filed by the school district did not influence the decision of the California Department of Education (CDE) to dismiss Plaintiffs’ compliance complaint. Rather, the CDE dismissed Plaintiffs’ Complaint “on its own volition.” Id. Accordingly, the ALJ determined that C.M. offered insufficient evidence of retaliation. See id.
The district court agreed with the ALJ’s analysis of the § 504 issue, and added that this issue had been previously addressed in the court’s order resolving Defendants’ Motion to Dismiss. The court explained that the issue was addressed as to the CDE in its order addressing the motion to dismiss. However, the court held that the “same reasoning holds true for the District.” Id. at p. 46. The school district acted in compliance with the governing regulation, which negated a retaliatory motive. See id. Rather than failing to address the § 504 issue, the district court actually addressed it twice. The Plaintiffs’ contrary allegation lacks merit.
Cases brought under the IDEA are complicated, and emotions sometimes run high. It is completely understandable that the parents of a child with a disability would leave no stone unturned in their effort to ensure that their child’s legal rights are fully protected. However, in this case, I agree with the ALJ and the district court judge that the Lafayette School District complied with the requirements of the IDEA. I would affirm the district court judgment in its entirety.