**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 11, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN STERLING COAD,

    Defendant - Appellant.

No. 25-1034

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:23-CR-00077-PAB-1)**

_____

John C. Arceci, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

J. Bishop Grewell, Assistant United States Attorney (Peter McNeilly, United States Attorney, and Marissa R. Miller, Assistant United States Attorney, on the brief), Denver, Colorado, for Plaintiff-Appellee.

_____

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **CARSON**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

Under 18 U.S.C. §§ 4241 and 4246, if a district court finds a criminal defendant incompetent and unable to be restored to competency for trial, the court can order the defendant's temporary hospitalization for an evaluation, and

possible certification, of his risk of bodily injury to another person or serious damage to property upon release.

John Coad is one such defendant. Since 2007, he has repeatedly written violent and sexually explicit letters to a female prosecutor from one of his state criminal cases. Based on the contents of the letters, a federal grand jury indicted him on four counts of mailing threatening communications.

After being alerted by the parties about Coad's likely incompetency, the district court held a hearing at which it found Coad incompetent to proceed to trial. Then, as directed by statute, the court committed Coad to the Attorney General's custody for treatment at a government hospital to try to restore him to competency.

Within the statutory four-month period in which to assess whether Coad had a substantial probability of attaining competency, a government psychologist advised the district court that not only did Coad have a substantial probability of being restored to competency with antipsychotic and mood-stabilizing drugs, but that the hospital had already succeeded in restoring him. That being so, the hospital's director certified to the court that Coad was competent for trial and would remain competent if he continued to take the prescribed drugs. Upon Coad's discharge from the hospital, the Attorney General returned him to pretrial detention.

After leaving the hospital, Coad stopped taking the needed drugs. And before the district court could hold a competency-restoration hearing, the

parties once again advised the court that Coad was incompetent. Facing a repeating loop with Coad's competency depending on his taking the needed drugs, the court again ruled Coad incompetent and further ruled that his competency could not be restored for trial.

At that standstill, the court granted the government's motion to order Coad hospitalized for an evaluation, and possible certification, of his dangerousness to another person or property if released. Coad opposed this hospitalization. This appeal concerns the legality of the court's hospitalization order.

We affirm the district court's order hospitalizing Coad for a precertification dangerousness evaluation under § 4246. But we reverse the portion of the court's order directing a more formal "examination and report" under § 4246(b) as premature and beyond the court's authority. We remand for further proceedings consistent with this opinion.

## BACKGROUND

### I.    Factual Background

John Coad has a long and well-chronicled history of mental illness. He began abusing alcohol and hallucinogenic drugs during adolescence and continued throughout his adulthood. Since the 1980s, his medical diagnoses have regularly included acute psychiatric problems such as psychosis, bipolar disorder, mania, and delusions. And he has sometimes acted violently toward himself and others.

3

Now in his late fifties, Coad has accumulated dozens of criminal charges for fraud, theft, assault, DUI, housebreaking, reckless injury, drug possession, domestic violence, and more. Except for forty-five days in 2020, he has been in custody for nearly twenty years.

In 2007, Coad began sending letters to a female attorney who had prosecuted him for domestic violence in Colorado state court. Many of his letters raised threats of violence and were sexually graphic. Though the attorney later moved to the East Coast, Coad located her and continued sending her disturbing letters until at least October 2024.

## II.     Procedural History

### A.     Indictment

In March 2023, a District of Colorado grand jury indicted Coad on four counts of mailing threatening communications. *See generally* 18 U.S.C. § 876(c). All counts arose from Coad's letters threatening his former prosecutor. Two counts were for letters he sent to her, and two counts were for letters he sent to another.

### B.     Competency

Within weeks of the indictment, the parties jointly moved for a competency hearing under 18 U.S.C. § 4241(a). Rather than ask the district court to temporarily commit Coad for a prehearing competency examination and report under § 4241(b), both sides relied on competency reports from Coad's unrelated state proceedings.

After the initial § 4241(c) hearing, the district court found Coad incompetent to proceed. As directed by statute, the court committed him to the Attorney General's custody for hospitalization and treatment in a "suitable facility." 18 U.S.C. § 4241(d). That facility then had a "reasonable period, not to exceed four months," to advise the court "whether there [wa]s a substantial probability that in the foreseeable future [Coad] w[ould] attain the capacity to permit the proceedings to go forward." *Id.* § 4241(d)(1). Because of high nationwide demand for evaluation and treatment, Coad was waitlisted for seven months before being hospitalized at the Federal Medical Center in Devens, Massachusetts.

In June 2024, a Bureau of Prisons psychologist at FMC Devens reported not only that medical staff could likely restore Coad's competency but that the staff had in fact had done so with antipsychotic and mood-stabilizing drugs. The hospital's director certified to the district court that Coad would be competent to stand trial if he continued to ingest the drugs as directed.

The court then scheduled a hearing under § 4241(e) to decide whether Coad was competent for trial. Meanwhile, the hospital discharged him, after which the Attorney General returned him to pretrial detention in the District of Colorado.

Days before the § 4241(e) competency-restoration hearing, Coad's counsel asked the district court for a ninety-day continuance. Counsel "remain[ed] unconvinced that Mr. Coad ha[d] been restored to competency"

5

and sought extra time for "[f]urther investigation" by Coad's own qualified expert. Supp. R. vol. III at 9–10. Counsel also noted "[t]he contingent nature" of the BOP psychologist's report, which had conditioned Coad's competency on his taking the prescribed medication. *Id.* at 9. The district court postponed the hearing but expressed concern that the delay risked Coad's "refusing medication at some point and becoming incompetent as a result." R. vol. I at 87–88.

The concern proved justified. Over the next few months, Coad stopped taking his antipsychotic and mood-stabilizing drugs. And by the time the parties received the defense's psychiatrist's report, they agreed that Coad was incompetent to proceed.

After a lengthy § 4241(e) hearing in January 2025, the district court again found Coad incompetent. This time, apparently agreeing with the government's view that Coad's competency would blink on and off depending on whether he was taking the prescribed drugs, the court went further and found Coad's competency unrestorable for trial.

### C. Dangerousness

Before the § 4241(e) hearing, the government filed a notice that if Coad was found incompetent, the government would request "an evaluation performed by a 'suitable facility' under the 'dangerousness' civil commitment proceedings described in 18 U.S.C. §§ 4246 and 4247." *Id.* at 56. In other words, the government previewed that it would seek to have a government

hospital evaluate Coad's dangerousness and, if dangerousness were found, for the hospital's director to file a certificate to enable the court to hold a hearing and determine whether the evidence of dangerousness was clear and convincing. *See generally* 18 U.S.C. § 4246(a), (d). The government contended that the court could order a psychiatric or psychological examination and report under § 4246(b).

Coad objected to the government's plan. First, he argued that because § 4246(a) refers to the certification of a person who "is hospitalized," the government needed to have certified him as dangerous while he was "hospitalized at FMC Devens from January through April 2024." R. vol. I at 63. He also contended that the district court lacked authority to "rehospitalize" him for that purpose, much less to order an examination and report under § 4246(b).

Second, Coad objected that he didn't fit within any of the three categories of people listed in § 4246(a) as eligible for a dangerousness certificate. Most relevantly, he disputed that he fit within the category of someone who "has been committed to the custody of the Attorney General pursuant to section 4241(d)," which to him required that he be "presently" committed under that provision. *Id.* at 68–69 (quoting 18 U.S.C. § 4246(a)). He maintained that his § 4241(d) commitment "ended approximately nine months ago," when his competency-related hospitalization ended and he was returned to pretrial detention. *See id.* at 69.

7

With the government's notice and Coad's objection pending, the district court held a § 4241(e) competency-restoration hearing. After considering the evidence, the court found that Coad's competency was unrestorable for trial. That being so, the court noted that Coad was "subject to" § 4246. R. vol. I at 94; *see generally* 18 U.S.C. § 4241(d). With the court's unrestorability finding, the government formally moved to dismiss Coad's charges and, as it had alerted the court it would do, moved for his temporary commitment for evaluation under § 4246(a) and (b).

The next day, the district court elaborated on its prior order, explaining that "§ 4241(d) indicates that a defendant becomes subject to § 4246 'at the end of' [his] hospitalization for a competency evaluation." *United States v. Coad*, No. 23-cr-00077, 2025 WL 90164, at *3 (D. Colo. Jan. 14, 2025). The court then ordered Coad hospitalized "for a dangerousness evaluation as governed by 18 U.S.C. §§ 4246(a)–(b) and 4247(b)." *Id.* at *4. But it deferred ruling on the government's motion to dismiss Coad's charges "until [after] the dangerousness evaluation is completed." *Id.*

### D.    Appeal

Coad timely appealed the order hospitalizing him for a precertification dangerousness evaluation. The court stayed its order pending appeal.

On appeal, Coad again argues that two preconditions to § 4246(a) are unmet. First, he reads § 4246(a)'s "is hospitalized" language as requiring that any dangerousness certification occur *before* the end of his hospitalization for

8

competency treatment under § 4241(d). Second, and similarly, he reads § 4246(a)'s "has been committed to the custody of the Attorney General pursuant to section 4241" language as requiring his *continuous* hospitalization for both his competency and dangerousness proceedings. He asks that we vacate the district court's order hospitalizing him for a precertification dangerousness evaluation and remand for further proceedings.

## JURISDICTION

Coad appeals the district court's order hospitalizing him for a dangerousness evaluation under 18 U.S.C. §§ 4246(a)–(b) and 4247(b). *See generally Coad*, 2025 WL 90164. We have appellate jurisdiction under the collateral-order doctrine. *See United States v. Deters*, 143 F.3d 577, 581–82 (10th Cir. 1998); *see generally Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

## STANDARD OF REVIEW

We review de novo questions of statutory interpretation. *United States v. Stacy*, 156 F.4th 994, 1005 (10th Cir. 2025).

## DISCUSSION

Once Coad's hospitalization for competency treatment ended without his regaining competency, the district court lawfully ordered him hospitalized for a precertification dangerousness evaluation. But the court lacked authority to order an "examination and report" under § 4246(b). Only a court in the same judicial district as the hospital can order that. So we affirm Coad's

9

hospitalization for a dangerousness evaluation and possible certification under § 4246(a), reverse the court's ordering a § 4246(b) examination and report, and remand for further proceedings.

## I.    Controlling Statutes

### A.    18 U.S.C. § 4241

Section 4241 sets a process for determining a criminal defendant's competency to stand trial. A defendant is incompetent if he "is presently suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d).

Initially, the court must determine whether there is "reasonable cause to believe" that the defendant meets the above standard. *Id.* § 4241(a). If there is, the court must schedule a competency hearing. *Id.*; *see generally id.* § 4241(c). Before the hearing, the court "may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court." *Id.* § 4241(b).

Subsections 4241(d) and (e) describe what happens next. Because these provisions are instrumental in resolving Coad's appeal, we quote them in full:

> **(d) DETERMINATION AND DISPOSITION.**—If, after the [competency] hearing, the court finds by a preponderance of the evidence that the defendant is [incompetent], the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

10

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

**(e) DISCHARGE.**—When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is [competent], he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. . . . The court shall hold a hearing . . . to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is [competent], the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings.

*Id.* § 4241(d)–(e).

To summarize, after the competency hearing, the district court faces two possible outcomes. If the court finds the defendant competent, the court terminates the § 4241 proceedings and proceeds to trial. *See id.* § 4241(d). But

11

if the court finds the defendant *in*competent, the court commits him to the

Attorney General's custody for hospitalization and treatment seeking

reattainment of competency.[1] *See id.* The hospital has an initial "reasonable

period of time, not to exceed four months, as is necessary to determine whether

there is a substantial probability that in the foreseeable future [the defendant]

will attain the capacity to permit the proceedings to go forward." *See id.*

§ 4241(d)(1). If the hospital finds such a "substantial probability" and the court

agrees, the hospital may take "an additional reasonable period of time" to try to

restore competency. *See id.* § 4241(d)(2); *United States v. Magassouba*,

544 F.3d 387, 391–92 (2d Cir. 2008).

This "additional reasonable period" of hospitalization ends at the earliest

of three times: (1) when the court finds that the defendant regained competency

for trial, *see* 18 U.S.C. § 4241(d)(2)(A), (e); (2) when any further time trying to

restore the defendant's competency becomes unreasonable, *see id.*

§ 4241(d)(2); or (3) when the court disposes of the defendant's charges

according to law, *see id.* § 4241(d)(2)(B).

Because any of those three events terminates any basis for further

competency-related hospitalization, *see id.* § 4241(d)(2), each also marks what

---

[1] Subsection 4241(d) custody is distinct from and additional to pretrial custody that the court might impose based on certain charges, the defendant's dangerousness, or his risk of flight. *See United States v. Magassouba*, 544 F.3d 387, 405, 408 & n.13, 413, 414 n.21 (2d Cir. 2008); *see generally* 18 U.S.C. § 3142.

the final paragraph of § 4241(d) defines as "the end of the time period specified." And when a defendant reaches "the end of the time period specified" in § 4241(d), he "is subject to the provisions of section[] 4246."[2] *Id.* § 4241(d).

### B.    18 U.S.C. § 4246

Section 4246 sets a process for determining the dangerousness of three categories of people who are soon due for release from federal custody. *See id.* § 4246. A person is dangerous if he "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." *Id.* § 4246(a).

Subsections 4246(a) and (b) are also instrumental in resolving Coad's appeal, so we quote them, too, in full:

> **(a) INSTITUTION OF PROCEEDING.**—If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is [dangerous], and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined  . . . The court shall order a hearing to determine whether the person is [dangerous]. A certificate filed under this

---

[2] The defendant is also "subject to the provisions of section[] . . . 4248," which covers people who are "sexually dangerous." 18 U.S.C. §§ 4241(d), 4248. Because the government doesn't seek to apply that provision to Coad, we don't address it further.

13

subsection shall stay the release of the person pending completion of procedures contained in this section.

(b) **PSYCHIATRIC OR PSYCHOLOGICAL EXAMINATION AND REPORT.**—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

*Id.* § 4246(a)–(b).

## II.    Coad's Hospitalization for Dangerousness Evaluation

The key moment for this appeal was when the district court found Coad incompetent and unrestorable. Once a defendant is found unrestorable, it is unreasonable to continue hospitalizing him for competency restoration. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."). So at that moment, Coad reached "the end of the time period specified" in § 4241(d). *See* 18 U.S.C. § 4241(d). And by § 4241(d)'s terms, he became "subject to" § 4246.

Coad challenges the district court's authority to then hospitalize him for a precertification dangerousness evaluation. The court knew about Coad's history of written threats to his former prosecutor. And after input from the parties, the court exercised its discretion and ordered Coad temporarily hospitalized for a dangerousness evaluation and possible certification.

As soon as Coad became "subject to" § 4246, the district court gained the authority to do what it did. The "subject to" language bridges § 4241(d) and

14

§ 4246. We would "effectively delete" "subject to" from the statute if we held that Coad is "subject to" § 4246 but that the district court can't take the first step—ordering that he be evaluated for possible dangerousness certification—needed to make § 4246 work. *See United States v. Berry*, 142 F.4th 184, 192 (4th Cir. 2025). Thus, the court has the inherent power to order a defendant's hospitalization for possible certification within a reasonable time after the defendant reaches the "subject to" language.[3] *See United States v. Godinez-Ortiz*, 563 F.3d 1022, 1030, 1032 (9th Cir. 2009) (explaining that the interplay between §§ 4241 and 4246 "necessarily contemplates the temporary commitment of [an incompetent defendant] so that the [hospital] director can conduct the evaluation necessary to make the certification decision"); *United States v. Williamson*, 161 F.4th 803, 809 (D.C. Cir. 2025) ("It is a well-established principle that district courts have inherent powers, including the

---

[3] Three circuits rely on § 4241(d)(2)(B), not the "subject to" language, to allow a district court to order a defendant's hospitalization for possible dangerousness certification. *See United States v. Woods*, 166 F.4th 318, 325 (2d Cir. 2026); *United States v. Curbow*, 16 F.4th 92, 98 (4th Cir. 2021); *Sealed Appellee v. Sealed Appellant*, 83 F.4th 399, 402–04 (5th Cir. 2023). We disagree with those circuits that this authority is lodged in § 4241(d)(2)(B). That subsection's sole function is to cut off any unexpired reasonable time for competency treatment once the court dismisses the defendant's charges. On the occurrence of the earliest of the three possibilities for ending § 4241(d)(2)'s "additional reasonable period" for competency treatment, the other two possibilities no longer matter. So if a defendant's "additional reasonable period" has *already* ended—if, for example, he was found incompetent and unrestorable—then § 4241(d)(2)(B) won't apply.

power to stay proceedings, which they can wield to respond to specific problems when doing so does not contradict any express rule or statute.").

The district court entered its order hospitalizing Coad for a dangerousness evaluation a day after finding his competency unrestorable. It left pending the government's motion to dismiss his charges. Certainly, a day's wait was within a reasonable time. And as we explain below, neither of the terms Coad brings to our attention—"is hospitalized" and "has been committed to the custody of the Attorney General pursuant to section 4241(d)"—suggests that the court lacked authority for its order. *See* 18 U.S.C. § 4246(a).

## A.    "Is Hospitalized"

Only the director of the hospital at which Coad "is hospitalized" can certify that Coad is dangerous. *See id.* As we interpret that language, it simply requires that Coad be evaluated in person and not from a distance on cold records. It doesn't stop courts from hospitalizing people in his position for a dangerousness evaluation and possible certification. Thus, if a defendant is no longer hospitalized sometime during or after his § 4241(d) proceedings—a situation that high demand for hospital beds often compels—the court can order that he be temporarily hospitalized a second time for the different purposes of evaluating and possibly certifying his dangerousness.

In contrast, Coad interprets "is hospitalized" as requiring an unbroken hospitalization for both competency and dangerousness proceedings. In his

view, once he was no longer hospitalized for competency treatment, he couldn't be "rehospitalized" for a dangerousness evaluation.

For several reasons, we reject Coad's interpretation. First, the statutes don't support his idea of a single hospitalization for multiple purposes. By its text, § 4241(d) authorizes hospitalization for *treatment* aimed at restoring *competency*. *See id.* § 4241(d) (explaining that once a court commits an incompetent defendant to the Attorney General's custody, "[t]he Attorney General shall hospitalize the defendant *for treatment* in a suitable facility" (emphasis added)). Indeed, the statute takes care to ensure that defendants are not held for an unreasonable time even for that limited purpose, and the text affords no basis to extend a defendant's § 4241(d) hospitalization for reasons other than competency treatment. *See id.*

Second, though §§ 4241 and 4246 are connected, each occupies its own field without merging. When a defendant reaches the end of any of the three times specified in § 4241(d), the district court can *then* turn to dangerousness under § 4246. After all, that's when the defendant becomes "subject to" § 4246. And given § 4246's "purpose of . . . protect[ing] the public from dangerous individuals suffering from a mental illness," it would make "little sense" to read the statutes as requiring a defendant's dangerousness evaluation and certification to occur under *§ 4241(d)*, before his competency treatment ends. *Berry*, 142 F.4th at 191.

17

Third, Coad's system would be inefficient and tax already overtaxed FMCs for no reason. When a district court orders additional time for hospitalization for competency evaluation and treatment under § 4241(d)(2)(A), it agrees with the hospital director that the defendant has a substantial probability of attaining competency so trial can go forward. *See* 18 U.S.C. § 4241(d)(1), (2)(A). If competency is restored, any time and effort spent evaluating dangerousness would be a waste. But under Coad's use-it-or-lose-it approach, courts with concerns about possible dangerousness would always have to order dangerousness evaluations during competency proceedings to protect against releasing dangerous defendants—including those who are later restored to competency.[4] And even for defendants who *can't* be restored to competency, Coad's system suffers from a separate problem: Because what matters is the defendants' *present* dangerousness, stale evaluations would need to be redone. *See Williamson*, 161 F.4th at 808 (stressing that what matters is the defendant's "current condition—that is, his condition when his release is imminent"—and not how long he had previously been hospitalized).

---

[4] The government asked the district court to hospitalize Coad at FMC Springfield or FMC Butner, which it described as "federal medical centers in districts that are known to have the most experience nationwide with § 4246 proceedings." R. vol. I at 56 n.3; *see generally Berry*, 142 F.4th at 189 (observing that when a district court ordered a defendant's dangerousness evaluation, "only two facilities nationwide . . . w[ere] equipped to conduct § 4246 evaluations," and at least one "was inundated with a backlog of cases").

**B.    "Has Been Committed to the Custody of the Attorney General Pursuant to Section 4241(d)"**

Subsection 4246(a) allows a dangerousness evaluation for Coad only if he "has been committed to the custody of the Attorney General pursuant to section 4241(d)."[5] As he did for § 4246(a)'s "is hospitalized" language, Coad argues that § 4246(a)'s "has been committed" language requires that he have a single, continuous hospitalization covering his §§ 4241 and 4246 evaluations and treatments.

Again, we disagree for several reasons. First, we read "has been" as meaning "ever was" during the ongoing proceeding. We rely on statutory text. Coad became "subject to" § 4246 only "at the end of the time period specified" in § 4241(d). *See* 18 U.S.C. § 4241(d). So by that time, of course, he had necessarily "been committed to the custody of the Attorney General pursuant to section 4241(d)." *See id.* § 4246(a). If Congress intended to require that defendants "subject to" § 4246 have *remained* in "the custody of the Attorney General pursuant to § 4241(d)," Congress could have easily chosen "is" instead of "has been."

---

[5] Though two other categories of people also qualify for dangerousness certification, Coad fits under neither of them. Those categories are (1) "a person in the custody of the Bureau of Prisons whose sentence is about to expire" and (2) a person "against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person." 18 U.S.C. § 4246(a).

Second, we note that Coad remained "committed to the custody of the Attorney General pursuant to § 4241(d)" even after being discharged from FMC Devens after competency restoration and returned to pretrial detention in Colorado. That custody commitment continued until the district court found him unrestorable. At most, Coad was outside that defined custody for only a day before the district court ordered his hospitalization for possible dangerousness certification.

Third, Coad's reading would require district courts to engage in ruses to obtain needed dangerousness evaluations for defendants in his position. Here, for instance, the court would have needed to send Coad back for another "try" for restoration under § 4241(d), then order a dangerousness evaluation, and then declare that it no longer found a substantial probability that Coad could be restored to competency for trial. Again, this would be wasted effort, and we do not read the statutes as requiring contortions to protect the public.[6] *See Berry*, 142 F.4th at 191.

---

[6] Alternatively, the district court could have granted the government's motion to dismiss the charges and then hospitalized Coad for a § 4246 evaluation after that. *See* 18 U.S.C. § 4246(a) (listing one category of people eligible for certification as those "against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person"); *Williamson*, 161 F.4th at 809 (describing a hospitalization order as "a reasonable response to the specific problem of making the 'dismissed-charges' category in § 4246(a) administratively workable").

### III.    Subsection 4246(b) Examination & Report

When the district court committed Coad for certification, it committed him "for a dangerousness evaluation as governed by 18 U.S.C. §§ 4246(a)–(b) and 4247(b)." *Coad*, 2025 WL 90164, at *4. It also set the evaluation period at forty-five days, with a possible extension of up to thirty more—the timeline for a § 4246(b) examination and report. *See id.*; *see generally* 18 U.S.C. §§ 4246(b), 4247(b).

But there can be no § 4246(b) examination and report—or any other § 4246 proceeding—without a § 4246(a) certificate.[7] *See, e.g.*, *United States v. Curbow*, 16 F.4th 92, 96 (4th Cir. 2021); *United States v. Lapi*, 458 F.3d 555, 562 (7th Cir. 2006). Plus, if there *is* a certificate, the hospital director sends it to the court of the district where the hospital is located. *See* 18 U.S.C. § 4246(a). And *that* court, which is not necessarily the court that committed the person for certification, is the one that decides whether to order a § 4246(b) examination and report. *See id.* § 4246(a)–(b); *United States v. Woods*, 166 F.4th 318, 323 (2d Cir. 2026); *Lapi*, 458 F.3d at 562. Thus, the district court jumped the gun by ordering more than Coad's temporary hospitalization for a hospital director to decide whether to certify him as dangerous.

---

[7] Because § 4246(a) certification is a threshold requirement, we disagree with the Ninth Circuit that "[t]he duration of [§ 4246(a)] commitments is controlled by" §§ 4246(b) and 4247(b). *See Godinez-Ortiz*, 563 F.3d at 1032.

21

We need not decide exactly how long a § 4246(a) certification can take or what level of evidentiary support it requires.[8] At bottom, a hospital director must determine whether a person is dangerous and whether there are "suitable arrangements for [his] State custody and care." 18 U.S.C. § 4246(a). So under § 4246(a), a district court can order a person's hospitalization for the "reasonable period" necessary to make those determinations. *See Berry*, 142 F.4th at 190, 192 (citation omitted). But beyond noting that this "reasonable period" does not permit a full prehearing examination and report under §§ 4246(b) and 4247(b), we leave issues of duration and sufficiency for a future case.

## CONCLUSION

We affirm Coad's temporary hospitalization for possible dangerousness certification under § 4246(a), reverse the district court's ordering a § 4246(b) examination and report, and remand for further proceedings.

---

[8] Different circuits have described the hospital director's burden in different ways. *Compare Godinez-Ortiz*, 563 F.3d at 1032 (explaining that an "evaluation" is "necessary to make the certification decision"), *with United States v. Wigren*, 641 F.3d 944, 946 (8th Cir. 2011) (holding that under § 4246(a), a certificate need only be "facial[ly] sufficien[t]").